May it please the Court, my name is Michael King, and I'm from the firm of Carney-Badley Spellman here in Seattle, and I'm here on behalf of the appellant Donald Burchett. For a second time, Mr. Burchett has had to appeal the summary judgment dismissal of his Establishment Clause claim against the aptly Robert Bromps. I plan to focus my argument today on the answer to three questions. The questions are, first, can the District Court's latest summary judgment be saved from reversal as a matter of summary judgment law, given this Court's decision in McLaughlin v. Liu? Second, if not, can the summary judgment be saved on the alternate ground of absolute quasi-judicial immunity? And third, given a reversal, should this case be remanded to a new judge? I urge the Court to answer these questions no, no, and yes. Turning to the first point, the controlling authority in McLaughlin v. Liu, the District Court granted summary judgment on the ground that my client's testimony was, quote, implausible, close quote. This Court held in McLaughlin v. Liu that summary judgment may be granted, may not be granted on that basis, when the non-moving party opposes summary judgment with direct evidence, such as testimony based on personal knowledge. Now here, Burchett opposed summary judgment with his testimony about what Bromps said to him. Under McLaughlin, the ensuing credibility contest is for the jury. The remaining question of summary judgment law is whether the Supreme Court's later decision in Scott v. Harris is clearly irreconcilable with McLaughlin. Scott involved a non-moving party whose version of events was contradicted by videotape. The Supreme Court held testimony to this version of events could not raise a genuine issue of fact, given what the videotape showed to have actually happened. Mr. King. Yes, Your Honor. Could you slow down just a bit? Yes, Your Honor. My apologies. I have that habit. Let me ask you a question. Yes. In Liu, the defendant employer said he had paid overtime wages to his employees and produced some evidence thereof. It made sense. His evidence made sense to his defense. I paid the overtime wages. Here, Mr. Burchett's statement, I was sent to assembly of God and prohibited from going to Seventh-day Adventist, when both had minors in attendance, and he was prohibited because of his conviction as a sexual violator from being in the company of minors. It doesn't make sense that Mr. Bromps would send him to a church where there were minors. I'm not going into the other evidence that Mr. Bromps provides. So the implausibility argument is not quite the same in McLaughlin v. Liu as it is here. Is it your position that McLaughlin v. Liu said that no matter how implausible the non-movement's declaration is, implausibility is not a reason to disregard it? Not exactly, Your Honor. I'm saying that in McLaughlin v. Liu, this Court said that when you have a clash of direct testimony, the non-moving party says X happened, the moving party says not X happened, that to that extent you have a credibility issue that's always for the jury. Now in McLaughlin, there... No, but concentrate on implausibility. Is implausibility simply something we cannot consider in weighing, because Anderson v. Liberty Lobby says, a genuine triable issue of fact. Now, the adjective genuine must mean something. What does it mean? Does it mean plausible? No, it doesn't mean that, because implausibility was a term taken from Matsushita, which was dealing with a very different circumstance. It was an antitrust conspiracy case. It was dealing with circumstantial evidence. And what this Court was trying to convey, I think, in McLaughlin, and squarely did in McLaughlin, was to point out that the concept of implausibility that was introduced into summary judgment law by the United States Supreme Court in Matsushita was a concept that was specific to the circumstance of claims that are based solely on circumstantial evidence. In McLaughlin, the employer in the position of my client actually had problems with his records, Your Honor. But why should implausibility be, in your words, limited to cases of circumstantial evidence which give rise to inferences, rather than also apply to direct evidence which itself is implausible? For instance, if Mr. Bronson said he told me to attend an alien church, it would be implausible. You mean like the Church of the Flying Spaghetti Monster, or a church where aliens are? Yes, but he didn't say that. He said, according to my client, that you got to attend an Assemblies of God church. But then we take a look and say, Assembly of God, why would he send them to Assembly of God where there are children present and prohibit them from going to the SDA where there are children present, where the main issue in this case is to keep Mr. Burchett away from children? That's exactly my client's point. Because overriding the obligation to enforce the orders to protect children was the apparent imperative of Mr. Bronson on a mission to- Is there any indication that Mr. Bronson had any connection with Assembly of God as a minister, as a matter of fact, I remember his testimony being that he never heard of the Assembly of God church on Havana. Well, let me try something else. You know, this is, it's totally implausible. Okay, now the question is, is summary judgment properly granted? The question is- And I understand your argument based on McLaughlin. Yes. But, these conditions are required to be in writing, okay? So, if as a matter of law they're required to be in writing, how can this single statement without anything supporting it create a material issue of family? In McLaughlin, the employer had problems with his own records. His employment records were consistent with the government's position in its wage and hour claim. And Lou was explaining- No, answer my question, not McLaughlin's case. My question is in this case, under these circumstances, these requirements are required to be in writing- Yes. As a matter of law. And why would anybody write down that they are using their power on the side to try to impose a faith test on somebody? Well, if they have to be in writing and he follows all the written requirements, then he complies with his parole or his release terms. But, Your Honor, my point is that it seems implausible to use the word that the district court judge used that Mr. Bromps would put down in writing, I'm also imposing a requirement that violates the Establishment Clause. I think that is an argument that trial counsel is entitled to take to the jury. Well, you know, we have other cases. The difficulty is, whether it's the case of the Church of the Flying Spaghetti or any other one line I said you didn't say, we have other case law that says if you have a self-serving affidavit, you need something else, more detail surrounding it. You can't just throw out a one-line aspect and your whole case can hang on that because you would never have summary judgment. Your Honor. So, I mean, that's Publishers Clearinghouse, FTC versus Publishers Clearinghouse. So how do you square your situation with a case like that? I confess I'm not familiar with the facts of Publishers Clearinghouse. I don't recall it being cited in the opposing brief. I do know that the McLaughlin holding is a case where not only was the testimony at issue but the documents, the employment records were consistent with the government's position and the employer had to explain those away. And I think the statement of the rule in McLaughlin based on the facts of McLaughlin is very clear. We have nothing but a conflict in testimony. And the fact that Bromps didn't write this down and put it in the file merely allows the trial lawyer for Mr. Burchett to argue, of course not. Guilty conscience. He knows that this isn't true. Do we know when the statement was made? It is not specified. Well, no, of course not. We don't know when it was made, who else was present, where it was made. There's no indication anybody else was present. If the government had a witness. I'm asking you, are there any details that he provided surrounding the statement? That the statement was made and that he had the impression that Mr. Bromps was on some sort of mission. That this was done despite the fact that children were present. He testified in answer to the question, do you know why he did this? And he said, no, I don't. No, it's not exactly what he said. And if I may find that statement, Your Honor. That's Excerpt of Record 238. It was almost like he wanted me to practice a certain religion and that was it. Now, that's an inference he's drawing from all the circumstances. Why would this man tell me to go to an assembly of God's children? An inference does not a material issue effect make. My question is, all he does is basically say statement made, period. We don't know kind of when, where, why, or how. We just have a single statement. And then, you know, your time is up, so we will ask the other counsel whether that's enough. It may be enough. Let me ask you one last question. Certainly. And impose upon you. If the conditions are required to be in writing and they weren't, where's your man's damages? What's the causation of any damages? The emotional distress of being denied his opportunity to attend service in his church. Why? He could disregard it. It's not in writing. I don't care about what you say. The corrections officer is authority and has said what he said. And for all my man knows, they are in writing. They are recorded someplace. No, no. No, you've just told us they aren't. No, I'm saying we've discovered that they weren't. Remember, those declarations about there's nothing in the file, et cetera, those come out when it's, if I may finish responding to this question, those come out when the case is remanded and the declarations weren't even called for. There hasn't been discovery about any of these circumstances. My client doesn't know that. All he knows is the correction officer is telling him, and you can only worship at an Assemblies of God church. And as far as my client knows, look, this is public authority and I better obey. Not quite. There's a written order signed by Mr. Twiggs and Mr. Bromps and by Mr. Burchett in the file. He knows that if his conditions are to be changed, not only does the supervisor have to sign it, not only does the probation officer have to sign it, but so does Mr. Burchett. With all due respect, Your Honor, to say that my client is on notice, that this is some sort of oral side deal and that there isn't some recording in the file and that the supervisor hasn't approved it, is drawing inferences that are precisely the kind that summary judgment law forbids. There's no evidence in which a reasonable person could find that any damage was caused to your man. Well, anyway, we've discussed. Just a quick question. Sure. If I may, Your Honor. We get that latitude. Is there any evidence that what the P.O. told your client altered his behavior? He didn't go to the church. But he, in fact, went to other churches and didn't tell the P.O. about it, correct? The sequence is that he went to a couple of churches and didn't tell the P.O. The sequence is that he drove by the Assemblies of God Church and saw there were children there, but he did not go to the Assemblies of God Church, so he did not worship in the church of his choice. Okay. Thank you. Good morning. Cartwright. Pleased to court. Mr. King, I'm Gerald Cartwright, Assistant Attorney General, and I'm here representing Community Corrections Officer Bronx. The way I see the central issue before the court this morning is whether the court, considering summary judgment, has to blindly accept a single, uncorroborated, self-serving statement. What do you mean blindly? We read it. When I say blindly accept, it means that statement is placed before the court and the court turns a blind eye, as Mr. King would have it, to everything else. That's exactly what McLaughlin v. Lou tells us. When there is an affidavit or there is proof as to direct evidence, not indirect, not inferences, not could, not would, should, but did, we have to take that for purposes of motion of summary judgment if it's a crucial fact. That's true. That's Anderson v. Liberty Lobby. And then Scott v. Harris and a number of cases decided in this court come along and say that when such statements are drenched in dubiosity. That's a new one.  But when they come to the court in that way, the trial court need not simply accept them, particularly when there's a written record. I don't know if Mr. Burchett, for example, is African American or not, but let's just assume he is. And Bromps says to him, I really hate dealing with blacks in this job and just watch out, period. That's all he says. We don't have, and no other, we don't know when it was made or where it was made. Do you think that Mr. Burchett wouldn't have some kind of claim he could go forward on so he could say, he said that and then he could say, no, I didn't say that, now we'd have a little trial? What would be the difference? Well, such a statement would be despicable, no doubt. But it's the kind of, the problem with it is it's the kind of a statement that can be made in every case. There has to be some, and what the courts tell us, is there has to be some other indicia that the statement was actually made. Otherwise, in every case a parolee can come forward and say, my parole officer did this despicable thing. But get around McLaughlin versus Lew. There the employer simply says, yes, I did pay overtime to my employees, and here are my records, which he made up himself. And that was enough to vitiate a motion of summary judgment on the grounds of the plaintiff. In that particular case, there was, along with the employer's statement, those records that you alluded to. And in that particular case. So what you have is have a rule, so long as the party not only states but fakes some records, then he can prevent summary judgment. But if he doesn't fake any records, he can't? No. When I say the court doesn't blindly accept, then the court goes on and decides, well, is what we're seeing here in the totality of the circumstances, looking at the entire record submitted to the court, does it make any sense at all? That's almost, that's dubiosity with the trial judge weighing the facts, isn't it? Well, there's caution always in summary judgment against that. But in cases like Scott versus Harris and Skilstad and Wilkinson, a little bit, I have to say it, a little bit goes on. I mean, the Supreme Court tells us that the court has to look to see if any reasonable jury would believe, would believe the statement in light of all the evidence in the record. I think the best thing you can tell us is give us some content for the term genuine when the courts, especially in the Anderson versus Liberty lobby, talk about a genuine issue of material fact. What does the court mean by genuine? It has to mean something besides issue of material fact. It has to have some content. My view of what the court means when they're talking about a genuine material issue of fact is that looking at the entire record before the court, is there an issue created that makes sense to one side or the other, to the non-moving party's side of the case? You know, it seems to me that you could have saved everybody a lot of trouble when you saw Burchette's statement and the PO's statement and just said, Judge, we need to have a hearing. We need to have a hearing and have both of these people take the stand under oath, and then you can decide who you believe and who you don't believe. But that didn't happen here. No. We had a little bit of procedural, I guess you'd call it abnormality in this case. On both sides. Yes. When the court, immediately after the case was remanded, asked both sides for additional briefing, I took that as the court continuing the summary judgment hearing into this issue and wanting to hear whether this case should proceed further. Was there a jury trial? That's how we proceed. I think there was a jury demanded for this case. So the briefs were submitted to Judge Quackenglish. He decided, based on the record before him, there's no issue here. Mr. Bromps, I mean, the totality of the record so strongly weighs in favor of Mr. Bromps, that no trial would be necessary, no hearing would be necessary, because Mr. Burchette signs his conditions in January of 2007. And interestingly, it's not specified exactly what time this statement was allegedly made. But if you look at the record, Mr. Burchette indicates that it's made when he was told, when he was first caught going to the Seventh-day Adventist church and confronted with that. That was in January of 2007, January 18th or 19th of 2007. And it was at that time that he entered into the stipulated agreement with the additional conditions, I will not go within three blocks of a church. That prompts his lawsuit. When he brings the lawsuit, he's bringing it under the free exercise clause, saying that condition, you shall not go within three blocks of any church, violates my free exercise rights. That claim's abandoned. And this notion of being limited to the assembly of God, church only, came up a year and a half after the fact. After he makes this statement for the first time in his deposition, August 2008, and if the condition were imposed, it would have been imposed in January of 2007. No complaint before that time, but ample writing to the contrary. The written stipulation in January, then again in March, Mr. Pardon me. Take me back. When was this statement from Bromps to Burchette allegedly made? January 2007. Before or after the three parties signed modification order? That would have been, it would have been contemporaneous with that. It would have been at that time. Then it's learned that Mr. Burchette had been attending other churches, but before January of 2007. But then it's learned, again in March of 2007, he comes to Mr. Bromps, Mr. Bromps having been alerted by a telephone call, he admits to Mr. Bromps, I went to a church out in the valley with the kids from Encrisco, a local organization. And at that point, Mr. Bromps tells Mr. Burchette, well, you've violated again. You continue to violate. You continue to go to churches without telling me so that we can put this safety plan in place. But this is not, this case is not about revocation. No. No, it's about imposing conditions to protect the public, to protect the children in the churches. What's your best case in the summary judgment context where you have one party saying A and the other saying not A and where the judge might think that statement A is implausible, that he can go ahead and enter, he or she enters summary judgment? The best case where they can? Yes. Well, I think this case comes pretty close. It's cases like this. No, I meant an existing authority, Ninth Circuit otherwise, that says two statements, A and not A, that would allow a district court to say I think A is implausible, so I'm going to grant summary judgment because I believe B. Well, I think it comes close in the Skillstad case, 2007 case decided here, an unlawful force case where the claimant said that the police sicced a dog on him that bit him several times, slammed his head into the police car and used unlawful force against him. That was the claimant's affidavit. The claimant had three eyewitnesses corroborating his affidavit. The officer said no. He was resisting, the claimant saying I voluntarily surrendered. The officer said no. He was resisting. That's why the force was used. The court grants summary judgment in favor of the officers because there were medical records that while they showed some injuries and showed a dog bite, weren't consistent with what the claimant said and his three eyewitnesses. So you've got this clash of evidence, but the court saying it just doesn't make sense when we look at the totality of the circumstances and then look at the medical records. This guy didn't get bit several times. He didn't get his head slammed into the police car. I've got your case. All right. Thank you. Your time has expired, but you can have a minute for rebuttal if you stick to it. Just two points focusing on McLaughlin. Judge Bea, you referred to McLaughlin saying this is not a question of inferences. I agree. The following language from McLaughlin I think is controlling. Lew does not ask that inferences be drawn in his favor, but that his testimony be taken as true. To this he is clearly entitled under Anderson and a host of other decisions. Well, but Anderson says, and I'm quoting, there are any genuine factual issues. It also says all justifiable inferences. Those are a couple of adjectives without content. That was the second point I wanted to address to give you some content. And I think what Scott v. Harris and his progeny shows is that when you testify to a fact, you get credit that it is true unless there is controverting evidence from a source that establishes contrary physical facts, the medical records in Skystat, the videotape in Scott v. Harris, the bank records, the computer records of transactions, and I think it's the Wilkinson case. But if you don't have one of those unique circumstances, you don't have that here. My client gets his testimony credited as true. It's a thin case, but he's entitled to go to a jury. Thank you. Thank you both counsel for your arguments this morning. Birchett v. Bromps is submitted.
judges: Hawkins, McKeown, Bea, Cjj